BARNETTE, Judge.
The plaintiff, Mrs. Dorothy Hill Monte-leone, was awarded judgment in the amount of $24,749 against the Board of Levee Commissioners of the Orleans Levee District for damages to her property. The Board appealed and plaintiff has answered the appeal seeking an increase in the award in the sum of $5,000 for mental anguish allegedly caused by defendant’s actions.
*755 Plaintiff's property, -consisting of a residence with outbuildings and a private swimming pool is located on a lot identified by municipal number 412 Lake Avenue in the City of New Orleans directly across the street from property owned by the Board of Levee Commissioners on Lake Pontchartrain. During the latter part of 1961, the Levee Board built on its property a small craft harbor known as the Orleans Marina, consisting of a Harbor Master’s Building, piers and other docking facilities. This major construction entailed the use of pile drivers and other heavy building machinery and equipment. During the course of the construction, plaintiff’s house and other structures on the lot allegedly were damaged by vibrations caused by the use of the heavy equipment.
When this suit was filed in 1962, the plaintiff named as defendants Boh Brothers Construction Company, Inc., two other contractors, and their respective insurers and the Board of Levee Commissioners. From a judgment rejecting plaintiff’s demands and dismissing her suit against all defendants, the plaintiff appealed. On appeal this court affirmed the judgment in favor of all defendants except the Board of Levee Commissioners, with respect to whom it was reversed. In holding that defendant liable for the damages we said:
“The record however does not disclose to us the exact extent of the damage physically nor the cost of repair. The list of repairs submitted by Plaintiff which is quoted hereinabove has not been amply proved and we feel that the Plaintiff should be given an opportunity to prove the actual compensable damage she suffered as a result of the activities of the Board of Levee Commissioners’ construction of the Marina. Finding therefore that there is liability under Article 667 of the Civil Code by the Orleans Levee Board to plaintiff we are going to remand this matter for the purpose of permitting the plaintiff to prove her claim for damages against the Board of Levee Commissioners.” Monteleone v. Boh Bros. Construction Company, La.App., 200 So.2d 402, 410 (1967).
On remand there was judgment for plaintiff for the exact amount claimed for items of damage as listed in our first opinion. Monteleone v. Boh Bros. Construction Company, supra, at 409. Therefore the only question before us on this appeal is the correctness of that award.
After a review of the record before us on this appeal, we find ourselves in no better position to assess the damages than on the first appeal. The same witnesses testified on remand who had testified at the original trial, and there is nothing of substance added to their former testimony. We discussed their testimony in some detail and quoted pertinent parts thereof in our original opinion, and we will not repeat it here. See Monteleone v. Boh Bros. Construction Company, supra, at 406-410.
The damages listed by plaintiff’s witness Wayne Stoffle, totaling $24,749, were not seriously disputed on an item-for-item basis, nor has any attack been made on the accuracy of the estimates for each item. The defendant does contend, however, that the damage is not attributable to causes for which it is responsible, but is the result of soil subsidence due to the natural instability of the soil accelerated by the lowering of the water table by subsurface drainage installed by the Sewerage and Water Board shortly before the beginning of construction work on the Marina. Further it contends that plaintiff’s house was built on a type of foundation generally known to be unsuited for construction in the locality, and this was a factor that contributed to the damage. Finally, it contends that plaintiff, having the burden of proof, has failed to discharge that burden by a preponderance of the evidence and has failed to show what portion of damage is attributable to the causes for which this defendant is responsible. Alternatively, defendants seek a reduction in the award contending that in no event can it be held responsible for all the damage alleged.
*756 Mr. Stoffle, plaintiff’s expert witness, conceded that the damage to plaintiff’s property was aggravated by the increased potential of soil subsidence as a result of the lowering of the water table. He discussed scientifically the physical processes involved to explain how the lowering of the water table would accelerate soil subsidence. He pointed out that natural subsidence would tend to be more uniform than accelerated subsidence with the consequence that the latter would cause a greater degree of damage, depending upon the rate of acceleration. He also testified that the process of subsidence was further accelerated by the vibrations caused by the construction work on the Marina.
Mr. Stoffle acknowledged the correctness of the report of Eustis Engineering Company relative to soil conditions in the area. This report indicated a high potential of natural subsidence in the first 20 feet of soil. He also conceded that the foundation of plaintiff’s house, consisting of individual piers rather than a continuous or chain wall type footing, was not recommended for construction on soil of the kind involved. Settlement of a house from natural or other causes is more likely to be uneven if built on individual pier foundations.
Finally, Mr. Stoffle conceded that it would be humanly impossible to determine what percentage of the total damage resulted from either the installation of subsurface drainage or the construction work on defendant’s property. It was his expert opinion, however, that the major cause of damage was the shock and heavy vibration from the construction work on defendant’s property.
The testimony of defendant’s expert witness, Frank Foster, a civil engineer, differed from that of Mr. Stoffle only as to the degree that vibrations from construction would cause accelerated subsidence and the consequent damage, but conceded that the vibrations were possibly a contributing factor. In short, whereas Mr. Stoffle’s expert opinion was that the construction work was the major cause of damage, Mr. Foster would, at most, only concede it to be a possible contributing cause, and therefore minor. We believe they were both well qualified in their respective fields of professional expertise.
We are not unmindful of the burden of proof carried by the plaintiff to establish with a preponderance of evidence the extent of damage and the cost of repair. The remand was ordered by us on the first appeal to give her an opportunity “to prove the actual compensable damage she suffered as a result of the activities of the Board of Levee Commissioners.” The defendant now argues that because the plaintiff has failed on remand to establish the proof we found wanting on the first appeal, her petition should be dismissed.
We have commented above that nothing of substance has been added and that we are in no better position now than on the first appeal to assess the damage for which the Board of Levee Commissioners is liable. We will not, however, deny plaintiff recovery, for we are convinced that substantial damage to her property was the direct consequence of the heavy construction work on the Marina. We are equally convinced that her property would have suffered some damage if the Marina had never been built. We also recognize the futility of any attempt to define with any degree of certainty the proportion of damage attributed to soil subsidence for which this defendant was not responsible and that which was caused by or from acceleration of subsidence as a result of its construction work.
In a situation such as we have here, the court must exercise its discretion and seek to make compensation which will most nearly comport with the demands of justice. We must fix the damage as best we can from the evidence before us. Germann v. 557 Tire Co., Inc., 167 La. 578, 120 So. 13 (1928); Bruno v. Employers’ Liability Assurance Corp., 67 So.2d 920 (La.App.Orleans 1953).
*757 There is no evidence that the repairs were ever made. Plaintiff admitted during trial that she had agreed to sell the property. It is reasonable to assume, however, that the property value had depreciated because of the need of major repairs.
There is no serious dispute as to the items of damage or the estimates of cost of repair submitted by Mr. Stoffle, aggregating $24,749. Two unexplained items labeled “contingencies,” totaling $1,895, seem questionable; however, in view of the rationale upon which we will attempt to assess the damage chargeable to this defendant, it would serve no practical purpose to delete them. At best, the total figure given by Mr. Stoffle is an estimate and can serve only as a guide to the court in assessing the damage.
In Germann v. 557 Tire Co., Inc., supra, the Supreme Court found that the estimate of cost to restore the plaintiff’s property was “about $3,000.” It also found that there were four causes each of which in some degree contributed to the total damage, and said at 14-15 of 120 So.:
“It is therefore impossible to say exactly how much of said damages was caused by the operation of the press, since no survey of said building was made at the time the operation was begun. But it is none the less quite certain that some of said damage was caused thereby.”
The court then divided the estimate by four and, accordingly, assessed the damage against the defendant at $750.
Applying that formula to the present case where there are at least two causes which, in our opinion, contributed to the total estimated damage to plaintiff’s property and the defendant Board of Levee Commissioners being responsible for one of them, it should be assessed with one half the estimated damage. Accordingly, we will accept the figure of $24,000 as a reasonably fair estimate of the damage to plaintiff’s property from all causes.
There was evidence that the property had been substantially improved after its purchase by Mrs. Monteleone, and apparently the repairs recommended by Mr. Stof-fle would have restored it completely. Such repairs as might have been necessary from normal depreciation during approximately 20 years of occupancy apparently were not taken into account in Mr. Stoffle’s estimate. For these reasons we think our estimate is most favorable to the plaintiff, and an award of $12,000 in damages against the Board of Levee Commissioners would do substantial justice. LSA-C.C.P. art. 2164.
Mental anguish has been recognized in our jurisprudence as an element of damage in certain cases and is allowable when the claimant has met the burden of proof factually. McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21 (1944); Nickens v. McGehee, 184 So.2d 271 (La.App. 1st Cir. 1966); Ford v. State Farm Mutual Automobile Insurance Co., 139 So.2d 798 (La.App. 2d Cir. 1962); Trahan v. Bearb, 138 So.2d 420 (La.App. 3d Cir. 1962); Holland v. St. Paul Mercury Insurance Co., 135 So.2d 145 (La.App. 1st Cir. 1961).
The trial judge was not impressed with plaintiff’s testimony on this question and held that she had failed to justify this claim. We find no error in this finding of fact and it will not be disturbed.
For the foregoing reasons the judgment appealed from is amended by reducing the award of damages in favor of the plaintiff, Mrs. Dorothy Hill Monteleone, against the defendant, Board of Levee Commissioners of the Orleans Levee District, to $12,000. As thus amended and in all other respects it is affirmed. Costs of this appeal are assessed against the plaintiff-appellee.
Amended and affirmed.